This case was heard before the Deputy Commissioner in Morganton on September 27, 1996. At that hearing, Kathy Hosiery Company, a prior employer of Plaintiff, and Carolina Risk Managers, their carrier, were also party Defendants. Subsequent to the hearing, Plaintiff entered a settlement agreement with Kathy Hosiery Company and Carolina Risk Managers. That agreement was approved by the undersigned on April 21, 1997. Therefore, Kathy Hosiery and Carolina Risk Managers are no longer Defendants in this action.
Upon review of all of the competent evidence of record with reference to the errors assigned, and finding no good grounds to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the award, except for minor modifications, the Full Commission AFFIRMS and ADOPTS the Opinion and Award of the Deputy Commissioner as follows:
 ***********
The Full Commission finds as fact and concludes as matters of law the following which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. The parties are bound by and subject to the provisions of the North Carolina Workers' Compensation Act.
2. At all times relevant to this claim, the employment relationship existed between Plaintiff-employee and Defendant-employer.
3. Plaintiff's wage with Houston Hosiery Mills may be calculated from a Form 22 wage chart.
4. Plaintiff started missing time from work on or about October 24, 1994 (when working for Kathy Hosiery) and again on or about December 16, 1994 (when working for Houston Hosiery).
5. The issues before the Commission concern whether Plaintiff sustained injury to her hand which is compensable and/or an occupational disease. If so, to what benefits is she entitled? If she has a compensable condition, which carrier is responsible?
 ***********
Based upon all of the competent evidence from the record herein, the Full Commission adopts the findings of fact by the Deputy Commissioner with minor modifications as follows:
 FINDINGS OF FACT
1. Plaintiff is a female who was born on July 2, 1963. She had previously worked as a sewer, working on curtains for J. P. Stevens Company.
2. While working for J. P. Stevens Company, Plaintiff developed problems with her right hand. She came under the treatment of Dr. William Pekman of Hickory Orthopaedic Center and was diagnosed with and treated for deQuervain's tenosynovitis. On March 4, 1993, Dr. Pekman performed a release of the extensor tendons. Dr. Pekman found that Plaintiff retained no permanent functional impairment as a result of this condition.
3. On September 21, 1993, Plaintiff was seen by Dr. E. Brown Crosby for follow-up on her right hand condition. Dr. Crosby treated her with nerve block injections. As of November 4, 1993, Dr. Crosby found Plaintiff was at maximum medical improvement with a fifteen percent permanent impairment of her right hand.
4. On November 14, 1994, Plaintiff was seen by Dr. Stephen Naso for a second opinion regarding her rating on the right hand. Dr. Naso assessed Plaintiff with a ten percent permanent impairment of the right hand.
5. Plaintiff worked as a knitter for the prior defendant Kathy Hosiery from September 19, 1994 through October 24, 1994. She left that employment because she contended that it aggravated her right hand condition.
6. Around November 27, 1994, Plaintiff completed a job application with Defendant Houston Hosiery Mills. In that application, when listing prior employers, she did not mention Kathy Hosiery or the fact that she left that job due to her hand problems. Plaintiff knew at that time that she should not engage in any work which would require repetitive use of her right hand, but she began working as a sock boarder for Houston around November 30, 1994.
7. While working for Houston Hosiery Mills, Plaintiff did not complain of hand problems or chest pain. It was not until after she had been working for Houston for over a week that Plaintiff ever mentioned to Employer her pre-existing hand problems. Although she mentioned her prior hand surgery, she did not indicate she was having any problems doing the sock boarding job. Plaintiff left her employment with Houston around December 16, 1994. At that time she told the mill owner, Darryl Houston, that she was going to leave her job before she got hurt.
8. After leaving her employment with Houston, around May 1, 1995, Plaintiff began baby-sitting for two children, earning about $165 to $175 per week. The two children she kept were ages four years and 14 months. At some prior time, Plaintiff had done baby-sitting for her sister, keeping three children.
9. Although Plaintiff alleges that during her employment with Houston she developed increased pain in her right hand and pain in her chest, the greater weight of the evidence fails to support such a finding. During her employment and at the time she left her employment there, Plaintiff made no mention to her employer of either hand or chest pain. After leaving her employment with Houston, she did not seek medical attention for either condition until June 8, 1995, when she returned to see Dr. Crosby, almost six months after leaving her job with Defendant and a month after starting her baby-sitting job.
10. Although Dr. Crosby testified that Plaintiff's job as a sock boarder could have aggravated her deQuervain's, Dr. Crosby cannot evaluate her condition between November, 1993 and June, 1995 since he did not see her during this time. Also, when he examined her on June 8, 1995, he found Plaintiff's upper right extremity was doing quite well. He assessed her with costochondritis, an inflammation in the rib area where the bone and cartilage meet. Although he stated that Plaintiff's job with Defendant could be causally related to her costochondritis, Dr. Crosby admitted that the exact cause of costochondritis is not known and there are no studies that relate this condition to particular jobs. He acknowledged that other activities, including housework and baby-sitting, could aggravate costochondritis.
11. Dr. Naso saw Plaintiff on February 3, 1997. He noted no change or worsening of her deQuervain's condition when compared to her last visit of November 1994. He noted possible costochondritis, which could be caused or aggravated by multiple factors, including lifting children or other heavy weights. Dr. Naso is familiar with the sock boarding jobs, and is of the opinion that this position did not expose Plaintiff to a greater risk of developing costochondritis.
12. Plaintiff's employment with Defendant did not significantly aggravate her deQuervain's condition. Even if the evidence should establish that she suffered a temporary flare-up in her right hand symptoms during the time she worked for Defendant, which is not found herein, her condition did not actually worsen during her employment with Defendant. Her condition remained virtually unchanged from November, 1994 until June, 1995.
13. Plaintiff's employment as a sock boarder with Defendant has not been established by the greater weight of the medical evidence to be the cause of her costochrondritis. Even if a causal relationship were clearly established, Plaintiff's employment did not place her at an increased risk of developing this condition.
14. Plaintiff voluntarily left her employment with Defendant in December, 1994, and the evidence fails to establish that she was unable to earn any wages after that time due to any condition related to her employment with Defendant.
 ***********
Based on the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. Plaintiff's employment with Defendant Houston Hosiery Mills did not significantly aggravate her pre-existing deQuervain's tenosynovitis. The evidence does not establish any trauma during the employment which would have significantly aggravated the condition. N.C. Gen. Stat. § 97-53(21).
2. Plaintiff has not sustained an occupational disease arising out of and in the course of her employment with Defendant Houston Hosiery Mills. Plaintiff has not proven that her job as a sock boarder caused her costochondritis or that her employment placed her at an increased risk of developing this condition. N.C. Gen. Stat. § 97-53(13); Booker v. Medical Center, 297 N.C. 458,256 S.E.2d 189 (1979).
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 ORDER
1. Under the law, Plaintiff's claim must be and the same is hereby Denied.
2. Each side shall pay its own costs.
This the ___ day of August 1998.
 S/ ________________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
S/ ______________________ CHRISTOPHER SCOTT COMMISSIONER
S/ ______________________ DIANNE C. SELLERS COMMISSIONER